Thank you, Your Honor. My name is Evan Tago and I represent the appellants in this case. And I would like to save some time for rebuttal as I think things have changed so much since the original briefing that I feel as if I should be the appellee at this point. Don't get cocky. I'm not cocky. Just because the Supreme Court has spoken. And a few others. So I will try to be brief in my opening remarks and then cede the ground to Mr. Bland. As the Court is aware, virtually every one of the dozens of courts to confront the issue has held that Concepcion means what it says, that courts cannot refuse to enforce arbitration provisions on the ground that they require arbitration to take place on an individual basis. Indeed, one of Judge Martinez's colleagues on the Western District, Judge Jones, put it this way, Concepcion is at minimum the death knell for any application of state law that declares arbitration agreements unenforceable because they bar class actions and class arbitrations. Was he talking about substantive or the substantive and procedural? I think he was talking about substantive unconscionability. So what happens under Washington law? Does Washington law require the agreement to be both substantively and procedurally unconscionable? Or does it have a rule that says that even if it's substantively conscionable, if it's obtained in a procedurally unconscionable way, which Kahn of footnote 6 I think suggests there are procedural bases on which you could attack an arbitration class action bar. What's Washington law in that regard? I confess I can't remember. I think it was addressed in Zuber and Adler, and I just can't remember whether they said you need both. But we'll get to that. Well, okay. Doesn't that sort of put you in the position of maybe having half a victory, but then you'd still have to deal with the procedural unconscionability issue in this case, wouldn't you? Possibly. It's been raised. Yeah, I'm not saying that it's not preserved. If the rule were that procedural alone were sufficient, then we might have to relitigate that. Most states require both, although some have said, and I think this may be, if I'm recalling it correctly where Washington is, is that substantive might be enough without having to establish procedural. Would procedural be enough without having to establish substantive under Washington law? Well, I think that may be open. As I say, I don't recall as I stand here today, I think they said it might be, that substantive alone might be enough, but I don't know that they've said that procedural alone might be enough. And, of course, if it were, it would basically invalidate the entire contract. It wouldn't just be limited to the arbitration provision. In a way, what you'd be saying, you couldn't use procedural unconscionability to sort of backdoor the substantive concern. If the state law so provides, why not? Well, if the state law provided in a neutral fashion that any contract could be invalidated at the whim of a customer if it is deemed to be procedurally unconscionable. That's not the whim. If it's deemed to be procedurally unconscionable, the law says it can be invalidated. If the law says that, then why wouldn't it be appropriate to remand this case for the court to make a determination as to whether or not procedural unconscionability exists? Well, what would you be striking down, though? You'd be striking down the entire contract, not just the arbitration. We don't know what the court would do. But wouldn't it be appropriate to let the court... The contract is a whole. You can't just say the arbitration clause is procedurally unconscionable. Why not? What if the evidence is that the contract waiver and all of that, the agreements were in small print buried in the midst of a lot of the verbiage? Of course, that isn't the record in this case, I understand. But the Supreme Court did indicate that while a class action waiver is substantively, even in an adhesion contract, is not substantively unconscionable, it reserved the issue, made clear through its footnote, at least, that there are some grounds on which those substantively conscionable clauses can, nonetheless, be invalidated under a procedural unconscionability. That's what procedural unconscionability is all about. It's complicated terminology, but basically it says, look, if the consumer who enters into this agreement doesn't really understand and have fair notice of what they're really getting into, well, that's a possibility. And you're saying that you're not sure whether Washington would say, under those circumstances, that the plaintiffs in this case, some or all of them, if Washington law applies, could establish that, in fact, that was the circumstance for them. We can't make that decision at this level, I don't think. But maybe we could. But apparently you thought this wasn't an issue in the case because you didn't prepare for it. Well, I'm afraid this may be one of the first times I didn't prepare for something. But it's true. Obviously it wasn't in the briefing, it wasn't addressed in the supplemental briefs, and it wasn't the basis for Judge Martinez's ruling, so I sort of neglected to do that. Is Washington law the correct law to apply? I feel like now we do have to go there. If procedural unconscionability is a possible basis for... Then it could matter which state, because some states recognize that as an independent ground and others may require something substantive as well. Yes, like California, for example, has the sliding scale, but you have to have some of both. So yes, and we feel, Your Honor, that Schnall is dispositive on this issue. The court said correctly in Schnall that there's a presumption favoring enforcement of contractual choice of law provisions, and that that presumption is especially strong when the defendant uses a conscionable provision that chooses the law of the customer's residence, which as the trial court in Schnall pointed out, is something that is what the customer reasonably would expect and is fair to the customer and makes it easier for the customer to litigate the claim. So Schnall flat-on said that the choice of law provision in AWS's contract is enforceable, and that is also consistent with this court's unpublished and non-presidential decision in Detweiler, which involved T-Mobile, another Washington-based cell phone company. And there the court resolved the issue on the first step of the McKee three-step test, which asked what would the law be if there were no choice of law provision. And under Washington law, you apply Section 188 of the restatement factors set forth there, and a panel of this court held in Detweiler that all of those factors favor application of the law of the customer's residence and therefore upheld the choice of law provision there, which because the customer was a Florida resident. How many of the plaintiffs in this putative class are non-Washington residents or non-Washington area code, whatever the venue and choice of law provisions provide in this case? There are some who are Washington. There are three named plaintiffs. Pardon? There are about a dozen unnamed plaintiffs. Okay, but some of them have Washington area codes, correct? Right, the three named plaintiffs. Yes. Okay, so at least they would have, if Washington law said there's a procedural unconscionability standalone argument, they would at least have the ability to pursue that claim. They would be able to ask Judge Martinez to look at their specific case. Now, that's a fact-based analysis and would cause them all kinds of problems if they want to have a class, which is, of course, down the line. But, you know, that's what this is really all about is they want to have a class action. So, you know, if they get a victory that, you know, if they get a remand that allows them to litigate over procedural unconscionability, that could be a pyrrhic victory. Well, but let me just, I want to make sure I understand where you're going, because Washington's policy on that could be so strong that even as to non-Washington area codes, is it possible that the Washington courts would say there's a conflict between the state law of these other punitive plaintiffs and even as to them, we would apply our strongly held view about procedural unconscionability and extend relief to them as well? Well, I don't think so, Your Honor. Going back to choice of law provision, you first would have to, you know, the first step at McKee requires application of the 188 factors, and I don't think you would even get to comparing the interests. If there's a conflict, if there's a conflict between Washington's policy on allowing procedural unconscionability and the law of the presumed other forum, isn't under Washington law, don't they have to resolve that conflict and decide whether they would defer to the non-forum? Well, I don't think you get to the conflict if you conclude that the other state's law would apply in the absence of a choice of law provision. Am I missing your point? Okay. Well, I'm not sure. I don't want to use up your time. Thank you, Your Honor. I'll reserve the rest of my time. You may do that. Thank you, Your Honor. If it pleases the Court, my name is Paul Bland. I represent the appellees. I'm hoping in a moment to take on the idea that all substantive unconscionability challenges to class action bans are wiped away. I respectfully don't agree with Your Honor's assessment, but I think why don't I start with the procedural unconscionability because that's been addressed here, and I think we have a slightly different take than my friend. First of all, Washington state law is absolutely clear that substantive unconscionability is enough, but the Washington Supreme Court has not itself spoken to whether procedural unconscionability can be enough. There is a Court of Appeals opinion in Washington that has stated in a footnote that procedural unconscionability can be enough to strike down a contract term. That view has not been adopted by the Washington Supreme Court, and as I stand here before you, I do not remember the name of that case, although I know that I represent you. I'm sure that there's a Court of Appeals opinion with a footnote that says that. We did raise procedural unconscionability arguments. I want to be clear that our procedural unconscionability arguments with respect to some portion of the putative class here, and it's probably the vast majority, are probably just going to be arguments along the lines of that it's a contract of adhesion, it's a take-it-or-leave-it contract drafted by the stronger party, that it's difficult to read, that kind of thing. My sense from the Washington case law and the case law that I'm familiar with most places is that that argument would not be enough to win a procedural unconscionability. There are a number of states that do say that procedural unconscionability alone is enough. However, because this class is so big, there are 20 million people in the putative class, there are a lot of people who got these phones in different ways and got their contracts in different ways, so people who signed up on the Internet got them one way, people who came into stores got them different ways at different times. We did have some evidence, I believe, in front of Judge Martinez that there were segments of this putative class, and to be honest, as I stand here, I don't remember which of them our named plaintiffs would apply to, but there are segments of this class who got the clauses in ways that I think there's going to be an excellent chance that the Washington Supreme Court would find were so procedurally unconscionable that they would not be enforceable. For example, I think that there's some facts on the lines that there's some people who came in and formed an agreement to get a cell phone, and then the arbitration clause is sent to them subsequently sometime later. And there is some case law around the country where courts have found that where an arbitration clause is sent substantially after the rest of the contract, that it's because it's a mere material term that that's procedurally unconscionable, that that won't be enforced. Now, that was not the principal focus of the proceedings in front of the district court because we were trying to have a class for everybody, no matter how they got these phones, and because under Washington law, substantive unconscionability was enough. If you could prove with evidence that in this case that the arbitration clause would prevent people from being able to effectively vindicate their substantive rights. So we focused on that issue. But we do have some procedural unconscionability arguments with respect to some elements of the class. But that's not for us to decide. If we were to follow the line of reasoning that my colleagues were describing, that is to say that if Concepcion deals with substantive unconscionability only, then there would have to be a remand because the district court didn't rule on procedural alone. I agree. And we would have developed the issue more. I agree that if the court feels that procedural unconscionability is – if the court is against us on substantive unconscionability but feels that the procedural unconscionability issue has not been fully resolved, which I think you're exactly right. I don't think Judge Martinez addressed that. I think the law at the time was clear that substantive unconscionability alone was enough, and that was the locus of the vast majority of the litigation. But we did put forward some evidence that there were segments of the class of people who got it – who got the arbitration clause in ways that were – What about the question whether Washington law would apply across the board or only to the Washington plaintiffs? Well, the district court's finding was that Washington law could apply because Washington had a powerful interest in deterring misconduct by Washington-based corporations. Well, that somewhat rises and falls with the main substantive unconscionability argument. If we were to disagree with your attempt to distinguish concepcion, there would be a federal policy or holding that would apply saying it's not substantively unconscionable. So in the face of that, how could the state have an overriding interest of the sort that you're describing? Well, to the extent that – okay, I'll try and accept all of your premises to answer the question without actually agreeing. I understand that you don't give up your position. Accepting all of your premises, Your Honor, I would say that then the issue that would need to be briefed and developed is, does Washington have a very strong policy in how agreements are formed such that if, in fact, we would be right that for segments of the putative class, that there are a lot of people who received this clause in a way that was so procedurally unconscionable, it was sent to them afterwards or it was communicated to them in a way that they would never actually be aware of, that it violates – the question would be, does that violate a fundamental policy of Washington State? And as I stand here, I don't have a – I just – the briefing and the point of the case in which we were looking into the facts about procedural unconscionability is far enough in my rearview mirror that I don't – I think we might have an argument that Washington law would apply. I agree that it's a high standard. I agree that we would need to prove that it would violate a fundamental policy of Washington law. And I have not researched – as I say, I don't think the Washington law in procedural unconscionability is developed nearly as much as in some other jurisdictions. So I guess I will join my friend in saying I'm not prepared to really give you a hard answer on this. I think that it's something that would be addressed in the district court. I think we would have a – I think we would have a vivid argument that at least for some people in this class, that this arbitration clause was promulgated in a way that was designed to make sure that no one would ever actually see it. And whether or not that goes to a fundamental policy of Washington law, I certainly am not in a position to identify a case. But I – Well, how does this tie in with what you were addressing at the beginning on substantive unconscionability? You seem to think that there's some lifeline out there that would rescue this case from Concepcion, which basically was addressing – I don't know if it's the identical, but highly similar. It's addressing the identical clause, but what we would suggest, Your Honor, is that there are powerful reasons to say that the clause itself is not the only thing that a court would look at in determining whether or not something was unconscionable. What the Discover Bank Rule did was the Discover Bank Rule was a categorical presumption. Whenever you had a case involved a small amount of money, the plaintiffs just got to go. So one of the reasons with all these cases that my friend refers to is that after Discover Bank, a lot of plaintiffs' lawyers became somewhat lazy. They ignored what the U.S. Supreme Court had said in the Randolph case and in some earlier cases where it said that the party challenging an arbitration clause has a burden of proving with evidence. If you look at the Randolph case, though, the evidence they were talking about wasn't just reading the clause. The clause was in front of the Supreme Court. But then Chief Justice Rehnquist held that while if the costs of going forward were so high that parties were barred from effectively vindicating their rights, effectively vindicating their rights, that the clause wouldn't be enforced. Then on page 91 of the decision, they went on to say that more than just the clause should be looked at. They said in this case, though, we lack information about how claimants fare under Green Tree's arbitration clause. Well, in the Concepcion case, the U.S. Supreme Court certainly lacked information about how claimants fared under AT&T's clause because the plaintiffs in the Concepcion case did no work, had no evidence whatsoever. They just walked in and said under Discover Bank, our claims are small. We win. There's no need for proof. It did not at all meet sort of the Randolph test for being able to argue effective vindication of rights. Similarly, I urge the Court to look at the Piette case that we cited. They're from 2009, an opinion written by Justice Thomas. Now, the employees argued in the Supreme Court for the first time, apparently, that the arbitration clause would not permit them to effectively vindicate their rights. And what Justice Thomas said is, well, if it's true that the arbitration clause would bar people from being able to vindicate their substantive rights, that that would be upheld. But he said in this case, that would require, and this is a quote, the resolution of contested factual allegations. So, again, what you had was you had the union show up in the Supreme Court with no evidence, just a bunch of arguments based upon abstractions. That's the Concepcion case. The Concepcion case is not an evidence-based case. It's not a case in which there's a great deal of work done by the plaintiffs to make an argument. It followed the Discover Bank line. Now, the only case which AT&T has pointed to out of that big list of cases in which it's clear that there was actually an evidentiary record is the Cruz case from the Eleventh Circuit. The rest of the cases that they cite are all cases, and we went through an enormous list of these in our brief, are cases in which there's no evidentiary record. The Cruz case, Your Honor, we do suggest is wrong. What the Cruz case said was that if you accept the premise that there is proof in this case that the effect of the arbitration clause is that only an infinitesimal number or proportion of consumers would be able to go forward, that still does not matter. And that is their argument here. Their argument here is that even after Judge Martinez goes through all of this evidence. Well, Justice Scalia's opinion certainly suggests as much by the broad generalizations about why class arbitration is an impossible fit for the Federal Arbitration Act. And his statements are very sweeping and not evidence based in the sense that you're using it. He has three reasons, I think, and they're all, you know, the risks are too great for the defendants. The procedures are supposed to be informal, et cetera. And those are generic problems in his view with class arbitration. Why don't those principles apply regardless of what facts you're bringing up? Those principles, Your Honor, I believe do apply. But what he was talking about there is if the Court were to strike down the ban on class actions, would it enforce the rest of the clause so that now all of a sudden AT&T would find itself in arbitration, not in court, but in arbitration on a class action basis. In arbitration where if a single arbitrator would decide to give us $10 billion or $100 billion, they would have no meaningful judicial review because you don't have judicial review in arbitration. In arbitration that would be completely the opposite of what arbitration has historically meant. Those are legal issues about whether or not you can have a class action in arbitration. Washington law, remember, does not require class actions in arbitration. In the Scott case, which involved a clause that had the same kind of jettison blow-up clause that AT&T has in this case, in the Scott case, the Washington Supreme Court struck down the ban on class actions and then it followed the contract and said that the class action, that the case would proceed with a court to decide whether it could be a class action or not. The pages of Justice Scalia's opinion in Concepcion that talk about how class actions in arbitration are extremely unfair to corporations and violate the will of the act have no applicability to Washington law. Washington law is substantially different on that. Washington law respects these types of clauses and is different from California law. In California law, Justice Scalia said that the Discover Bank rule could end up with a company finding itself in arbitration, not in court, but in arbitration on a class action basis which they never had meant to agree to. And that's very different from what I'm talking about. But with respect to the evidence, what Justice Scalia said in the Concepcion case with respect to whether or not the class action ban would gut people's abilities to pursue their rights, Justice Scalia said the claims are, and this is an exact quote from the opinion, most unlikely to go unresolved. He said the claims were most unlikely to go unresolved. In this case, by contrast, not only did we prove that the claims are unlikely to go resolved, we got a finding from the district court based upon a wane of actual evidence that only an infinitesimal number and proportion of consumers would ever be able to vindicate their rights under this statute. This case could not be more different than a case in which Justice Scalia can say based upon no evidence but just the only thing in front of him is the clause, the claims are most unlikely to be, to go unresolved. It's a very, very, it stands in a very different matter. The only significant argument that they make against it as well, a bunch of courts in cases of no evidence have ruled against us and the 11th Circuit agreed with us that just does not matter even if it's true that people would not be able to effectively vindicate their rights, which is the language of the test. It's whether people can effectively vindicate their rights. It's not sort of can they formally vindicate their rights in a meaningless fashion. They use much broader language in that. But their argument is that, well, that only applies to federal statutes, not state statutes. First of all, I think that Chief Justice Roberts, when he was on the D.C. Circuit, got this right in the Booker case. The idea that he just didn't realize that the Mitsubishi Motors case was from a context of federal statutes and therefore it would never apply to state law is ridiculous. What Chief Justice Roberts understood was the point of the Arbitration Act is to say that you change forums, you change procedures, you go from being in court to being in arbitration. It wasn't that you repeal underlying civil rights and consumer protection laws. There was nothing that said state laws are wiped away. And also their position would lead to ridiculous results. Then you could say in an arbitration clause, if you have a federal claim, then you could get all of your rights, but if you have a state claim, all of the damages provided by state statutes are denied to you. That would be a crazy situation, and that's where they're asking this court to go. My time is up. Thank you. You have a short amount of time left for rebuttal. Thank you, Your Honor. Briefly on the choice of law point, I do want to, I think, address Judge Fischer's question by saying my belief is that the state of the customer's residence has more powerful interest in contract formation with the customer than the quasi-arbitrary location of a company that's sending them the contract. Why is it arbitrary? It's where they're located. That's half the contract. Yes, it's where they're located, but it's sort of, it could be any. You're saying pick the other contracting party because you like it better, and they're saying pick your contracting party. I mean, either way, you're picking your contracting party. The interest of, I think, why would Washington have a greater interest in regulating the way in which contracts are presented to customers in New York or Texas or Florida than New York, Texas, or Florida would have? Because it doesn't want entities, I mean, arguably at least, it doesn't want entities based in Washington to go around the country doing what it thinks is terrible. It's based here. But that's basically projecting its policy preferences to all the other states. It implicates the same kind of issues that the Supreme Court talked about in BMW and State Farm. But that would presumably be for the district court to consider in the first instance, assuming that we go down that path. Fair enough. I just didn't want to make it seem as if I was evading the question and didn't think we had the right answer to it. With respect to Mr. Bland's points for distinguishing Concepcion, he's right that the 11th Circuit squarely rejected the position he took here. And the rationale, I think, is compelling. The court said, the plainest evidence goes only to substantiating the very public policy arguments that were expressly rejected in Concepcion, namely that the class action waiver will be exculpatory because most of these small value claims will go undetected and unprosecuted. Indeed, if you look at this court's decision in, it was called Laster at the time, but the court acknowledged there that, yes, anyone who presents a claim is likely to be made whole. But the problem is all these people, lots and lots and lots of people won't present their claims. In other words, it was the exact same argument. And in addition, a lot of the same evidence was before the court. They didn't have the self-serving lawyer affidavits, but they did have the empirical evidence that they relied on so heavily, that they rely on heavily here as well. That evidence was presented to this court in their merits briefs and then again presented to the Supreme Court. If you look at pages four to five of the respondent's brief in the Supreme Court, you'll see the same evidence there. So I don't think that there's any really meaningful way to distinguish the case. The bottom line is they're asking you to create a split with four other courts of appeals and disregard the decisions of 17 district judges within this circuit. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted and we appreciate very much the arguments of both counsel.
judges: Graber, Fisher, Rawlinson